FILED
2022 Mar-30  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| JEFFREY BERNARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:20-cv-01559-HNJ |
| | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Jeffrey Bernard seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for a period of disability, disability insurance, and supplemental security income benefits.  (Doc. 1).  The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 11).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge ("ALJ"), works through a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."  *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02.  *Id.* at §§ 404.1520(d), 416.920(d).  If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would

2

prevent any person from performing substantial gainful activity.   20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997))).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id*.

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g).  If the claimant can

3

perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Bernard, age 49 at the time of the ALJ hearing, protectively filed an application for disability, disability insurance, and supplemental security income benefits on October 12, 2017, alleging disability beginning August 28, 2015. (Tr. 204–17). The Commissioner denied Bernard's claims, and Bernard timely filed a request for a hearing on February 2, 2018. (Tr. 130–39, 142–43). The ALJ held a hearing on July 3, 2019, (tr. 15), and issued an opinion on October 15, 2019, denying Bernard's claims. (Tr. 12–30).

Applying the five-step sequential process, the ALJ found at step one that Bernard did not engage in substantial gainful activity after August 28, 2015, his alleged onset date. (Tr. 17). At step two, the ALJ found Bernard exhibited the severe impairments of "degenerative disc disease with radiculopathy; degenerative joint disease of the knees; unspecified restrictive lung disease; depressive/bipolar disorder; and schizophrenic/psychotic disorders . . . ." (Tr. 17–18). At step three, the ALJ found that Bernard's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18–20).

Next, the ALJ found that Bernard exhibited the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ramps/stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; he must avoid even moderate exposure to dusts, odors, gases, fumes, and other pulmonary irritants; he must avoid all exposure to hazards such as open flames, unprotected

5

heights, and dangerous moving machinery; and he is also limited to unskilled work which is simple, repetitive and routine; his supervision must be simple, direct, supportive and non-confrontational; interpersonal contact with supervisors and coworkers must be incidental to the work performed, e.g. assembly work; he will do best in a well-spaced work setting with his own work area, or, where he can frequently work alone; he must not be required to work at fast paced production line speeds; he should have only occasional, gradually introduced workplace changes; he must have normal, regular work breaks at least every 2 hours; he should have only occasional, non-intensive contact with the general public; and he might miss as much as 1 day per month due to psychological symptoms.

(Tr. 20).

At step four, the ALJ determined Bernard could not perform his past relevant work as a carpenter, injection molding machine operator, material handler, mixer blender, or glass installer. (Tr. 28). However, at step five, the ALJ determined Bernard could perform a significant number of other jobs in the national economy considering his age, education, work experience, and RFC. (Tr. 29–30). Accordingly, the ALJ determined Bernard has not suffered a disability, as defined by the Social Security Act, since August 28, 2015. (Tr. 30).

Bernard timely requested review of the ALJ's decision. (Tr. 200–03). On August 5, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1–6). On October 7, 2020, Bernard filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Bernard argues the ALJ failed to properly evaluate his subjective symptoms and their effect on his ability to work. For the reasons discussed below, the

undersigned concludes his contention does not warrant reversal.[2]

> A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. [*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from the condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021) (per curiam). A claimant's testimony coupled with evidence that meets the pain standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, and republished October 25, 2017, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side

---

[2] Based upon Bernard's arguments, the court only assesses the evidence pertaining to Bernard's physical impairments.

effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. § 416.929(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Bernard testified he cannot work a full-time job because he has issues with his breathing, lower back, shoulders, and knees. (Tr. 48). Bernard suffers from a constant pain that sometimes increases. (*Id.*). He rated his pain a 5/10. (Tr. 48–49). Bernard explained once he starts moving around, his back pain elevates and restrains him from engaging in physical activity. (Tr. 49). He averred to having sciatica and feeling "bone on bone" pain in his back. (*Id.*). Bernard attributes his back pain to bending over. (Tr. 60). He explained if he bends over repeatedly for 10-15 minutes, his back will "shut down" and he can no longer bend over. (*Id.*). Bernard further expressed that when his back shuts down, it takes approximately a week for him to recover. (Tr. 59). Bernard's back pain also causes him to alternate between sitting and standing every 15-20 minutes. (Tr. 61–62).

Bernard currently takes around 2,4000 milligrams of Ibuprofen per day to treat

his pain.  (Tr. 49, 54–55).  In the past, he used to take prescription pain medication, which kept his pain from worsening.  (Tr. 49, 54).  The prescription pain medication also helped Bernard become more mobile and reduced his pain by 30%-40%.  (Tr. 49).  Bernard has not undergone any surgery to treat his back.  (Tr. 48).

Bernard also suffers from chronic obstructive pulmonary disease ("COPD").  (Tr. 50).  Without engaging in any physical activity, Bernard loses his breath "out of nowhere."  (Tr. 56–58).  For treatment, he uses an inhaler once in the morning and once at night.  (Tr. 50).  Bernard also uses an emergency inhaler because he experiences moments where he cannot breathe.  (*Id.*).

Bernard experiences shoulder issues and pain if he puts his arms over his head.  (Tr. 51).  His right shoulder hurts more than his left, and Bernard mainly uses his right hand.  (*Id.*).  Similarly, both of Bernard's knees have arthritis, but his right knee gives him more issues.  (*Id.*).  He also suffers bone spurs in both of his ankles.  (*Id.*).

Bernard experiences trouble kneeling, crouching, crawling, and squatting.  (Tr. 51, 56).  In addition, Bernard's ability to walk has decreased over time because of his physical and breathing issues.  (Tr. 57).  Bernard stated he can walk "a ways," but he reaches exhaustion more quickly now.  (Tr. 57–58).  He also described reduced breathing on a hot day and losing his breath over "any kind of excitement."  (*Id.*).

In his Function Report, Bernard stated he does not take care of anyone, and his son takes care of their pets.  (Tr. 256).  Bernard's family helps him prepare meals on a daily basis.  (Tr. 259).  When Bernard does prepare food, he prepares canned food or

premade meals.  (*Id.*).  Bernard sweeps, but he cannot do other house or yard work because of his back pain.  (Tr. 259–260).  Bernard walks or rides in a car when travelling. (Tr. 260).  He grocery shops about four times a month.  (*Id.*).  Bernard walks to his family's home with his son on a regular basis, and he otherwise walks as much as possible.  (Tr. 261).  Bernard's condition affects his ability to lift, squat, bend, and kneel. (Tr. 262).  Bernard further explained "spinning" causes him lower back pain.  (*Id.*).  He also feels dizzy when he stays in the sun.  (*Id.*).  Bernard averred to using a cane and back brace when his back goes out.  (Tr. 263).  He explained a doctor prescribed him the cane.  (*Id.*).

The ALJ found that Bernard's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but concluded that Bernard's "statements concerning the intensity, persistence, and limiting effects" of his impairments were not consistent with the objective medical evidence in the record.  (Tr. 21).[3]  Substantial medical evidence in the record supports the ALJ's findings.

---

[3] The ALJ did not explicitly reference Bernard's Function Report in his opinion.  Nonetheless, the ALJ's opinion states he "considered all [of Bernard's] symptoms" based upon 20 C.F.R. 404.1529, 20 C.F.R. 416.929, and SSR 16-3p.  (Tr. 20).  In addition, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude the ALJ considered the claimant's medical condition as a whole."  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal alterations and citation omitted).  For the reasons discussed herein, the ALJ's opinion reasonably portrays he considered Bernard's condition as a whole.  Accordingly, any error arising from the ALJ's failure to summarize Bernard's Function Report manifests harmlessly, particularly as Bernard does not raise any issue regarding the omission.  *See Nance-Goble v. Saul*, No. 4:20-cv-00369-CLM, 2021 WL 2401178, at *3–5 (N.D. Ala. June 11, 2021) (finding the ALJ did not specifically mention the claimant's relevant hearing testimony but stated he considered "all [her] symptoms" based upon §§ 404.1529, 416.929, and thus, did not improperly omit reference to the claimant's testimony).

On March 27, 2015, Bernard visited Rapid Care complaining of knee pain, chest pain, and left shoulder pain. (Tr. 309). A physical exam revealed a good range of motion in his knees and clear lungs with no rales, rubs, or rhonchi. (Tr. 310). Bernard sounded very coarse, but he demonstrated no cough. (*Id.*). An x-ray exam exhibited "questionable bilateral interstitial infiltrates in the lower lobes [and] right ventricular hypertrophy." (*Id.*). Bernard received a referral for a pulmonary, cardiology, and orthopedic consultation. (*Id.*). He also received prescriptions for an inhaler, Tramadol, Naprosyn, Levaquin, "M-End PE," and Robitussin. (Tr. 311).

On April 6, 2015, Bernard returned to Rapid Care complaining of right knee pain and left shoulder pain. (Tr. 313). Bernard's respiratory exam exhibited clear to auscultation and percussion. (Tr. 315). Bernard also exhibited a normal gait and station, normal alignment and mobility, and no noted deformities. (*Id.*). Bernard received a Lincocin and Celestone injection, along with a referral to undergo an MRI for his right knee. (Tr. 316).

On May 4, 2015, Bernard complained of left shoulder pain, chest pain, and loss of feeling in his left arm. (Tr. 318). Douglas Ginas, M.D., reported Bernard being unable to raise his arm greater than 80 degrees. (Tr. 320). Bernard received a prescription for Tramadol and Naprosyn. (*Id.*). He also received a referral for an MRI of his left shoulder and a pulmonology evaluation. (*Id.*).

On November 10, 2015, Bernard complained of lower back pain and explained that his Tramadol prescription did not reduce the pain. (Tr. 322). Dr. Ginas assessed

Bernard with chronic low back pain with radiculopathy, chondromalacia patella, "some type of loose body [with] effusions on both knees," and shoulder pain. (Tr. 323). Dr. Ginas opined that Bernard's back pain "ha[d] not been adequately addressed by the orthopedic group." (*Id.*). He further noted Bernard ambulated with a cane, had an antalgic gait, "needed to be evaluated for surgery on his knees," and needed to obtain an MRI of his lumbosacral spine. (*Id.*). Dr. Ginas prescribed Bernard Norco and Naprosyn, and referred him to pain management. (*Id.*).

On December 21, 2015, Bernard returned to Rapid Care and requested prescriptions for Norco and Ibuprofen. (Tr. 326). Bernard stated he still suffered from chronic low back pain and appeared to ambulate with a cane. (Tr. 327). Bernard received a prescription for Norco and Naprosyn. (Tr. 328).

On April 21, 2016, Bernard requested a steroid shot for his back and desired a referral to a back surgeon. (Tr. 329). Bernard stated his back pain had increased and began radiating down his lower extremities. (*Id.*). A physical exam of Bernard's pulmonary system displayed no abnormalities. (Tr. 330). As for his musculoskeletal system, Bernard had no deformities and a full range of motion in all extremities, but he experienced lumbar spine tenderness. (*Id.*). Bernard received a Celestone injection and a referral for an MRI. (Tr. 331–32).

On December 8, 2016, Bernard requested again to consult with a back surgeon. (Tr. 338). Bernard informed Dr. Ginas a previous MRI revealed "quite a bit of pathology." (Tr. 340). Dr. Ginas referred Bernard to a back surgeon and put in an

12

order for Bernard to receive a Toradol injection.  (Tr. 341).

On January 19, 2017, Bernard checked-in at Rapid Care complaining of left knee pain attributed to a fall.  (Tr. 343).  Dr. Ginas noticed Bernard wore an "elastic patellar cutout brace and us[ed] a cane to ambulate."  (Tr. 345).  Bernard demonstrated pain with the flexion and extension in his knees.  (*Id.*).  Bernard received a prescription for Norco and Naprosyn, and a referral to see an orthopedist.  (Tr. 346).

On February 1, 2017, Bernard visited Northeast Orthopedic Clinic for his radiating lumbar pain.  (Tr. 297, 454).  In addition, Bernard complained of bilateral shoulder and knee pain.  (Tr. 298, 455).  During a physical exam, Bernard exhibited normal posture and coordination, and he used an assistive walking device.  (*Id.*).  Daniel O. Ryan, M.D., noted Bernard demonstrated some weakness of the EHL's bilaterally, but normal active extension of the knees, normal hip range of movement, normal knee range of movement, and a stable ligamentous exam of both knees.  (*Id.*).  Dr. Ryan did notice, however, some swelling and mild synovitis in his knees.  (*Id.*).  He also exhibited no "absent patella reflexes" or "[a]chilles reflexes bilaterally."  (*Id.*).  When reviewing plain films of Bernard's lumbar spine, Dr. Ryan found "some degenerative changes and loss of disc space height at L5-S1, L4-5, to a lesser degree L3-4 and L2-3 with anterior osteophyte formation and some end plate sclerosis, possibly some bony foraminal encroachment at L5-S1."  (*Id.*).  An MRI of Bernard's lumbar spine also portrayed "multi-level degenerative changes, modic changes throughout the lower lumbar articulations, bulging discs but no significant stenosis at any level."  (*Id.*).  Bernard

requested surgical intervention, but Dr. Ryan recommended therapy, anti-inflammatories, and a brace instead. (*Id.*). At this visit, Bernard declared "he was 'basically looking for a back operation so that he will be more likely to get disability.'" (*Id.*).

On September 13, 2017, Bernard visited Rapid Care complaining of lower back pain. (Tr. 347). Dr. Ginas described Bernard's back as "quite a mess" and stated he suffers from severely degenerative disc disease and bulging discs at multiple levels. (Tr. 349). Dr. Ginas also noted Bernard did not qualify for surgical intervention. (*Id.*). At this time, Bernard ambulated with a cane and lacked a prescription for pain medication for a while. (*Id.*). Bernard received a prescription for Norco and Naprosyn. (Tr. 350). He also received a referral for pain management. (*Id.*).

On October 17, 2017, Bernard visited Pain Specialist of Gadsden complaining of sciatica, osteoarthritis, shooting back pain, shoulder pain, and lower neck pain. (Tr. 375). Bernard rated his pain 5/10, but he stated the "pain is present constantly" and he suffers severe function impairment. (*Id.*). Bernard stated lying on his side, physical activities, and stress aggravate his pain, but he asserted that applying cold presses, elevating the affected area, immobilizing the affected area, and lying down provides him pain relief. (*Id.*). John Randall Underwood, M.D., found Bernard exhibited normal breath sounds and respiratory effort. (Tr. 377). Bernard also presented no chest wall deformities, tenderness, or edema. (*Id.*). Dr. Underwood assessed Bernard with "sacrococcygeal disorders," "other specified dorsopathies" in the lumbar region, spinal

14

stenosis in the lumbar region, and "other intervertebral disc displacement" in the lumbosacral region.  (*Id.*).  He prescribed Bernard Norco, Tizanidine, and Trazodone.  (Tr. 378).  Dr. Underwood also recommended Bernard undergo a lumbar medial branch block.  (*Id.*).

On November 9, 2017, Bernard returned to Dr. Underwood and complained of lower back pain.  (Tr. 379).  Bernard stated no change in location, quality, severity, or timing of his pain since his previous visit.  (*Id.*).  However, Bernard expressed that Naproxen and Hydrocodone registered good effectiveness.  (*Id.*).  During this visit, Dr. Underwood noted Bernard exhibited normal breath sounds and respiratory effort, along with no chest wall deformities, tenderness, or edema.  (Tr. 380).  Bernard received a prescription for Norco, Cyclobenzaprine, Tizanidine, and Trazodone.  (*Id.*).

On November 22, 2017, Bernard underwent a lumbar medial branch block.  (Tr. 381).  Bernard rated his pain 7/10.  (*Id.*).  Bernard also stated he did not have any chest pain and had not experienced any chest pain in the previous couple of days.  (Tr. 382).  Bernard tolerated the procedure well.  (*Id.*).  Dr. Underwood diagnosed Bernard with lumbar facet syndrome.  (*Id.*).

On November 27, 2017, Bernard visited Rapid Care complaining of left side chest pain and a burning sensation in his back.  (Tr. 406).  Bernard's lungs appeared clear based on auscultation and percussion.  (Tr. 407).  Bernard reflected tenderness in his cervical thoracic lumbosacral spine, but he moved his extremities well and appeared grossly neurovascularly intact in all extremities.  (Tr. 408).  Bernard also complained of

constant chest pain, yet his physical exam revealed clear lungs and an unremarkable chest x-ray. (*Id*.). Bernard also complained of neck pain that radiated into his shoulder and down his left arm. (Tr. 409). Bernard received a prescription for Gabapentin. (*Id*.). He also received a pulmonology referral. (Tr. 410).

On December 4, 2017, Bernard returned to Rapid Care stating he needed disability paperwork filled out regarding his current status. (Tr. 412). Dr. Ginas noted Bernard "was told about TOC about a year ago and was told back surgery was not . . . good for him . . . [a]nd [that] he went to N.E. Orth and was told th[e] same thing." (*Id*.). Specifically, Dr. Ginas stated:

> [Bernard] comes in today [and] needs some paperwork . . . regarding his medical status[.] [H]e obviously does have a severely damaged lumbosacral spine[.] [A] MRI has been done in April 2015 and again in May 2016 which verified severe degenerative disc changes[,] herniated disks[,] and bulging disks at almost every level in his back[.] [Bernard] has chronic low back pain and . . . he is taking pain medications at this time which does not totally relieve his pain[.] I do not feel that he would be able to be gainfully employed at this point in time . . . .

(Tr. 414).

> Accordingly, on December 4, 2017, a formal letter signed by Dr. Ginas stated:

> The patient Jeffery Bernard . . . has been a patient of Dr. Ginas since 2015. Dr. Ginas treats his conditions [sic] Anxiety and Depression. Mr. Bernard was recently admitted for Psychosis and is being treated for this by Dr. Shehi[.] Mr. Bernard has a medical status of severely damaged lumbosacral spine[.] [A] MRI has been done in April 2015 and again in May 2016 which verified severe degenerative disc changes[,] herniated disks[,] and bulging disks at almost every level in his back. He has chronic low back pain[.] Dr. Ginas does not feel that he would be able to be gainfully employed at this point in time.

(Tr. 388, 416, 451).

On December 27, 2017, Bernard underwent a consultative examination with Alvin V. Tenchavez, M.D. (Tr. 396, 399). Bernard stated he applied for disability benefits based on his low back pain, shoulder pain, and knee pain. (Tr. 396). A physical examination of Bernard's lungs exhibited equal chest expansion, no retractions, and auscultations revealed normal breath sounds throughout both lung fields. (*Id.*). As for his neuromuscular system, Bernard demonstrated he could heel walk, toe walk, tandem walk, and stoop and rise on his knees. (Tr. 398). Bernard tested negatively during his straight leg raising test in both the sitting and supine position. (*Id.*). Dr. Tenchavez also found Bernard could handle small objects and ambulate without any assistive devices. (*Id.*). Bernard displayed a normal range of motion in all his extremities. (Tr. 400–01). He also demonstrated a normal range of motion in his back except for flexion and extension in his dorsiflexion spine. (*Id.*).

On January 11, 2018, Marshall Medical Center South performed a chest x-ray on Bernard which showed no "significant abnormality." (Tr. 466). On February 15, 2018, Marshall performed a pulmonary function test on Bernard. (Tr. 464). The test revealed "a severely decreased DEV1/FVC ratio and mid-flow value and maximal minute ventilation." (*Id.*). Bernard also demonstrated worsening flow values upon exposure to bronchodilator, yet he exhibited a normal forced vital capacity normal and borderline normal total lung capacity. (*Id.*). He portrayed mildly reduced residual volume and moderately reduced diffusing capacity. (*Id.*). Bernard exhibited "[c]ombined restrictive lung defect with associated severe obstructive pattern. (*Id.*). "There [was] no

reversibility upon exposure to bronchodilator" and "[m]oderate reduction in the diffusing capacity [was] noted." (*Id.*).

On March 18, 2019, Bernard arrived at Rapid Care requesting a refill for his Hydrocodone. (Tr. 421). At that time, Bernard reported radiating low back pain and rated it 5/10. (*Id.*). Bernard received a prescription for Norco. (Tr. 424). On March 19, 2019, Bernard submitted a urine test which revealed inconsistency with Bernard's prescribed medication. (Tr. 430).

On April 19, 2019, Bernard returned to Rapid Care to refill his medications again. (Tr. 425). He stated he still suffered lower back pain that radiated down his legs. (*Id.*). Bernard rated his pain 6/10 when off his medication and 4/10 when on his medication. (*Id.*). Bernard further answered he had the ability to perform his daily activities while on his medication. (*Id.*). Dr. Gina again reported Bernard as experiencing chronic low back pain with radiculopathy, but no surgical candidacy. (Tr. 427). He further noted a history of COPD, although during the visit Bernard exhibited clear lungs, no shortness of breath, or dyspnea. (*Id.*). Bernard received a prescription for Norco and an inhaler. (Tr. 428). Dr. Ginas also referred Bernard to another pain center. (*Id.*). On April 22, 2019, Bernard submitted another urine test which again revealed inconsistency with Bernard's prescribed medication. (Tr. 431).

The record portrays Bernard suffers degenerative disc disease in his back, degenerative joint disease in his knees, and restrictive lung disease. For such conditions, Bernard received prescription pain medication, steroidal injections, and an inhaler. In

addition, Bernard never qualified as a surgical candidate or received surgical intervention.   Therefore, the conservative treatment of Bernard's conditions weigh against his subjective complaints.   *Sheldon v. Astrue*, 268 F. App'x. 871, 872 (11ᵗʰ Cir. 2008) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." (citation omitted)).   The record also demonstrates that Bernard did not follow his pain medication regimen given the inconsistency of his urine tests with his prescribed medication.   *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11ᵗʰ Cir. 2003) ("We have held that 'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability.'" (citation omitted)).   And although Bernard ambulated with a cane during various medical visits, he later tested negatively during a straight leg raising test, exhibited a normal range of motion in all his extremities and most parts of his back, and ambulated without an assistive device during his consultative exam with Dr. Tenchavez.   Therefore, substantial evidence supports the ALJ's assessment Bernard can perform light work with certain limitations.

Bernard points to various test results and diagnoses – a 2015 x-ray of his lungs; a November 2015 x-ray of his knees; a February 2017 x-ray and MRI of his lumbar spine; an October 2017 diagnosis; and a January 2018 pulmonary function test – to contend substantial evidence does not support the ALJ's adverse decision.   However, Bernard does not argue the ALJ failed to consider this evidence, which the ALJ very well did; instead, he asks the court to reweigh the evidence or second-guess the ALJ's conclusions, which the court cannot do given the substantial evidence standard.   *See*

19

*Winschel*, 631 F.3d at 1178 (""We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."" (alteration in original) (citations omitted)).

Bernard also highlights a letter signed by Dr. Ginas stating he has the inability to work. First, the ALJ did not need to heed Dr. Ginas's opinion regarding Bernard's ability to work. As the Eleventh Circuit recently reiterated:

> An administrative law judge is not required to agree with the statement of a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). Whether a claimant meets the statutory definition of disability is an administrative finding, not a medical opinion. That administrative finding is "reserved to the Commissioner." *Id.* § 404.1527(d). And because the Commissioner has delegated his authority to make the finding at the hearing level to an administrative law judge, the finding is effectively reserved to the administrative law judge. *See id.* § 404.1546(c). A medical source's opinion that a claimant is "disabled" or "unable to work" is not dispositive of a disability claim because the determination is reserved to administrative law judge acting on behalf of the Commissioner. *Id.* § 404.1527(d)(1).

*Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338–39 (11th Cir. 2021).

As for Dr. Ginas's medical opinion regarding Bernard's impairments, the ALJ gave due consideration pursuant to the prevailing standard. On January 18, 2017, the Commissioner revised the regulations governing the assessment of medical opinion evidence for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1520c). Bernard's claims, filed on August 17, 2017, fall under the revised regulations. Pursuant to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)

or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  Rather, the ALJ must apply the same factors in the consideration of all medical opinions and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinion.  *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors.  20 C.F.R. § 404.1520c(b)(2).  Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1)–(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations.  20 C.F.R. § 404.1520c(c)(3)(i)–(iv).  The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file.  20 C.F.R. § 404.1520c(c)(3)(v).  The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to "evidence showing a

medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."   20 C.F.R. § 404.1520c(c)(5).

After thoroughly reviewing all the medical evidence in the record, the ALJ found Dr. Ginas's opinion unpersuasive due to its lack of supportability and consistency with the record:

> I find the statements of the claimant's primary care physician regarding the claimant's inability to work unpersuasive. While the opinion lacks specific functional limitations reasonably related to the claimant's noted impairments, which is a finding reserved to the Commissioner, the physician is not an orthopedic specialist, a pulmonologist or a psychiatrist. In fact, his findings with regard to the claimant's back being of a severe nature are in inconsistent with objective observations made by the examining physician and the notations made by the Orthopedic physician the claimant consulted about surgery. Moreover, the opinion was submitted prior to later lab work, which revealed the claimant was not taking his medication prescribed at Rapid Care. In addition, he regularly noted the claimant had antalgic gait and ambulated with a cane; however, it does not appear he prescribed him the cane and more recent records do not reflect the claimant presented with a cane or needed it. Further, treatment notes from other physicians generally do not reflect the claimant needed or used a cane. Thus, I do not find a limitation for an assistive device is necessary. Accordingly, I find this opinion is inconsistent with other physicians in the record and not supported by objective findings, imaging and lab work ordered by said physician.

(Tr. 27).

As the foregoing review portrays, substantial evidence supports the ALJ's decision to find Dr. Ginas's assessment unpersuasive.  As stated previously, in February 2017, Dr. Ryan noted an x-ray exhibited "some" degenerative changes and loss of disc space height with "mild" anterior osteophyte, "some" end plate sclerosis, and "possibly some" bony foraminal encroachment.  (Tr. 298).  Dr. Ryan further reported an MRI

portrayed multi-level degenerative changes, modic changes throughout the lower lumbar articulations, bulging discs, yet there ensued "no significant" stenosis at any level. (*Id.*). These objective findings contradict Dr. Ginas's statements that MRIs from April 2015 and May 2016 demonstrates Bernard suffers severe degenerative disc disease and thus cannot work.

Furthermore, Bernard received conservative treatment for his conditions and failed to follow his prescribed medication regimen. And after the date of Dr. Ginas's letter, Bernard demonstrated ambulation without an assistive device, a full range of motion in all his extremities, and largely a full range of motion in his back during a consultative exam with Dr. Tenchavez.

In sum, the ALJ offered adequate explanations for discounting Bernard's pain testimony and Dr. Ginas's opinion regarding Bernard's ability to work. The ALJ properly cited objective medical evidence to support his findings, and Bernard has not offered any argument or pointed to any facts undermining the substantial evidence supporting the ALJ's RFC assessment. Thus, the ALJ did not err in assessing Bernard's pain allegations or RFC.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 30th day of March, 2022.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE